RECEIPT NUMBER
_501388_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN (DETROIT) DIVISION

DIRECTV, INC., a California corporation,

      Plaintiff,

v.

CHRIS RYAN,

      Defendant.

No. **04-70275**

COMPLAINT FOR COMPENSATORY,
STATUTORY AND OTHER DAMAGES,
AND FOR INJUNCTIVE RELIEF

ROBERT H. CLELAND

MAGISTRATE JUDGE CAPEL

Plaintiff DIRECTV, Inc., by and through its attorneys, alleges as follows:

## INTRODUCTION

1.     Plaintiff DIRECTV, Inc. brings this action against Chris Ryan for unlawfully manufacturing, distributing, and/or selling devices intended to facilitate the illegal and unauthorized reception and decryption of DIRECTV's subscription and pay-per-view television programming.

2.     Plaintiff DIRECTV, Inc. is the nation's leading direct broadcast satellite system, delivering approximately 225 channels of digital entertainment and informational programming to approximately 11.0 million homes and businesses equipped with specialized DIRECTV receiving equipment. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its television programming.

3.     At all relevant times, News Datacom Limited, NDS Americas, Inc. and NDS Limited ("NDS") developed the technology and equipment used by DIRECTV to encrypt its transmissions, including Access Cards which, upon activation by DIRECTV, permit subscribers to view DIRECTV's television programming in a decrypted – descrambled – format. The

Access Card is a serialized card with a unique electronic identifying number and is provided to subscribers as a component of the digital satellite equipment. It is identical in size and shape to a credit card; however, each Access Card has an embedded microprocessor that controls the decryption process and other functions.

4.    Defendant Chris Ryan has engaged and continues to engage in the unlawful manufacture, distribution and/or sale of illegal devices which are intended to permit viewing of DIRECTV's satellite television programming without authorization by or payment to DIRECTV.

5.    Defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521. Plaintiff DIRECTV brings this action to restrain these illegal activities against it.

## PARTIES

6.    Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the state of California.

7.    Defendant Chris Ryan is a resident of Port Huron, Michigan.

## JURISDICTION AND VENUE

8.    This action arises under the Communications Act of 1934, as amended, 47 U.S.C. § 605; the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205; the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

9.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338 (a)-(b), 47 U.S.C. § 605(e)(3)(A), 17 U.S.C. § 1203(c) and 18 U.S.C. § 2520(a). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Personal jurisdiction is proper because defendant is either a resident of Michigan or has established minimum contacts with Michigan.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-1391(b)(2) as the defendant resides in the Eastern District of Michigan, and a substantial portion of the events giving rise to DIRECTV's claims arose in the Eastern District of Michigan.

## FACTUAL BACKGROUND

12. Plaintiff DIRECTV, Inc. has invested billions of dollars to develop the United States' first high-power, direct broadcast satellite system. DIRECTV delivers hundreds of channels of digital entertainment and informational programming to homes and businesses in the United States equipped with specialized DIRECTV receiving equipment – a small satellite dish (typically 18 inches in size), an integrated receiver/decoder ("IRD") and an Access Card which is necessary to operate the IRD. DIRECTV's satellite television programming currently includes major cable networks, major studio movies, local broadcast stations in certain markets, and special event programming offered on a pay-per-view basis, and a variety of other sports and special interest programs and packages.

13. NDS is a developer and supplier of proprietary encryption and "smart card" technology. NDS researches, develops, manufactures and sells electronic identification, signature, encryption and security products, devices and services. In particular, NDS provides subscriber management systems, technology and products – including Access Cards – that allow the scrambling and unscrambling of satellite transmissions.

14. At all relevant times, NDS supplied DIRECTV Access Cards that were programmed and serialized (i.e., assigned unique electronic identifying numbers) by NDS. The

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 3

cards were provided to consumers as an integrated component of the IRD.  IRDs were manufactured by Hughes Network Systems, Thomson Consumer Electronics (under the RCA, GE and other brand names), Sony Corporation and other manufacturers authorized by DIRECTV.

15.     Persons who have purchased DIRECTV receiving equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly.  Additionally, a subscriber can order pay-per-view events and movies either by "impulse," using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

16.     DIRECTV does not manufacture digital satellite system hardware.  DIRECTV sells programming, which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming rights holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers, and holds license rights under the Copyright Act to exhibit the programming to its subscribers.

17.     All programming distributed by DIRECTV is delivered to DIRECTV's broadcast centers in Los Angeles, California or Castle Rock, Colorado.  At the broadcast centers, DIRECTV digitizes and compresses the programming.  The resulting signal is encrypted – electronically scrambled – by DIRECTV to prevent unauthorized reception.  DIRECTV then transmits the signal to satellites located in stationary orbits approximately 22,300 miles above the Earth.

18.     The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with satellite dishes and IRDs.  The small satellite dishes

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 4

(typically 18 inches in size) can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business. The signal is received by the dish and transmitted by wire to the IRD. The IRD (a box approximately the size of a VCR player) acts like a computer which processes the incoming signal using the credit card sized Access Card. The Access Card is loaded into the IRD through a slot in the front or back of the unit.

19.     The Access Card is historically provided to DIRECTV subscribers as an integrated component of the IRD. After a subscriber installs the dish and IRD at his or her home or business, and purchases one or more programming packages from DIRECTV, DIRECTV electronically activates the subscriber's Access Card by downloading software over the satellite to the card enabling it to decrypt the programming ordered by the subscriber.

20.     The Access Card acts as a reprogrammable microprocessor and uses "smart card" technology to (1) authorize the decryption of that DIRECTV programming specifically purchased by the subscriber, and (2) capture and transmit to DIRECTV the subscriber's impulse pay-per-view information (via a modem located within the subscriber's IRD).

21.     The Access Card is a key component in DIRECTV's security and accounting systems, as more specifically described below:

(a)     Security System: To prevent unauthorized signal reception and program viewing, DIRECTV's transmissions of television programming are encrypted at DIRECTV's broadcast centers. The Access Card enables the subscriber's IRD to decrypt the signals and permit program viewing in accordance with the subscriber's authorized subscription package and pay-per-view purchases.

(b)    Accounting System:  The Access Card also records the subscriber's purchases of DIRECTV pay-per-view programming.  Impulse pay-per-view purchases are recorded on the subscriber's Access Card and, at periodic intervals, the Access Card transmits this viewing history by initiating a telephone call (by means of a modem within the IRD) to DIRECTV's Conditional Access Management Center ("CAMC") in Castle Rock.  From the CAMC, the information is forwarded to DIRECTV's billing system.

22.    Plaintiff DIRECTV has significant interests, commercial and otherwise, in maintaining and securing the integrity of its programming, technology and products, including the Access Cards, and in prohibiting unauthorized reception and use of their protected communications.

## DEFENDANT'S WRONGFUL CONDUCT

23.    Beginning at a time unknown and continuing to the present, Chris Ryan has engaged in repeated illegal and improper acts, practices and schemes:

(a)    to assist, aid and abet the illegal and unauthorized reception and decryption of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such programming;

(b)    to defraud DIRECTV of subscription and pay-per-view revenues and other valuable consideration by manufacturing, distributing, and selling illegal devices intended to facilitate the reception and decryption of DIRECTV's satellite television programming without authorization by or payment to DIRECTV;

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 6

(c)     to defraud DIRECTV of revenues and other valuable consideration by manufacturing, distributing and selling illegal devices intended to illegally modify DIRECTV Access Cards;

(d)     to misappropriate and convert to defendant's use trade secrets and confidential research, development and commercial information belonging to DIRECTV, and to infringe DIRECTV's proprietary interests therein, by copying, reproducing, cloning and modifying computer programs and other information developed by or on behalf of DIRECTV, without authorization by or payment to DIRECTV;

(e)     to interfere with DIRECTV's contractual and prospective business relations by manufacturing, distributing and selling illegal satellite signal theft devices to existing and prospective DIRECTV subscribers; and

(f)     to conceal defendant's fraudulent schemes and activities from and to hinder detection by DIRECTV and law enforcement officials.

24.     On or about January 28, 2002, DIRECTV, with assistance of the United States Marshals, executed Writs of Seizure upon EQ Stuff, Inc. ("EQ Stuff"), an internet seller of illegal satellite signal theft devices.  DIRECTV obtained various business records evidencing an ongoing illegitimate enterprise, including purchase orders and other records.  EQ Stuff customers typically placed orders through various websites EQ Stuff operated, including eqstuff.org, eqbl.org, and eqstuff.ca.  They typically received their orders by mail or commercial carrier.  The business records obtained from EQ Stuff evidence substantial purchases of illegal satellite signal theft devices by defendant.

25.     Defendant has knowingly and willfully combined and conspired with others to defraud plaintiff DIRECTV of rights, properties and revenues belonging to it.

26.     Defendant has committed and engaged in various acts in furtherance of their fraudulent schemes against plaintiff DIRECTV. Upon information and belief, those acts include, but are not limited, to the following:

(a)     Defendant Chris Ryan purchased approximately eight signal theft devices from EQ Stuff. These purchases began on or about July 28, 2001, and continued until at least October 28, 2001. Defendant Ryan purchased these illegal signal theft devices and resold them in interstate commerce.

27.     By distributing and selling illegal satellite signal theft devices, defendant has directly and intentionally facilitated the unauthorized reception and decryption of DIRECTV's satellite television programming by persons not authorized to receive it.

28.     Defendant's wrongful conduct, as herein alleged, has caused and continues to cause significant and irreparable harm to DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

## FIRST CLAIM

### (FACILITATING UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(a))

29.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 8

30. By designing, developing, manufacturing, assembling, modifying, importing, exporting, trafficking, distributing and/or selling illegal satellite signal theft devices and providing software, information and technical support services therefor, defendant has assisted the unauthorized reception and use of DIRECTV's satellite transmissions of television programming by persons not authorized to receive such transmissions, in violation of 47 U.S.C. § 605(a).

31. Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

32. Defendant has violated Section 605(a) of the Communications Act willfully and for purposes of direct or indirect commercial advantage or private financial gain.

33. Defendant knew or should have known that assisting third persons in the reception and use of DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendant will continue to violate 47 U.S.C. § 605(a).

///

///

## SECOND CLAIM

### (MANUFACTURE AND SALE OF SIGNAL THEFT DEVICES
IN VIOLATION OF THE COMMUNICATIONS ACT, 47 U.S.C. § 605(e)(4))

34.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

35.     Defendant has engaged in the business of manufacturing, assembling, modifying, importing, exporting, distributing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of DIRECTV's satellite transmissions of television programming, or are intended by defendant to assist other persons in the unauthorized reception and use of DIRECTV's satellite transmissions of television programming, in violation of 47 U.S.C. § 605(e)(4).

36.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

37.     Defendant has violated Section 605(e)(4) of the Communications Act willfully and for purposes of direct or indirect commercial advantage or private financial gain.

38.     Defendant knew or should have known that manufacturing, assembling, modifying, importing, exporting, distributing, and/or selling illegal satellite signal theft devices, which are primarily of assistance in unauthorized reception and decryption of DIRECTV's

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 10

satellite television programming, was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, defendant will continue to violate 47 U.S.C. § 605(e)(4).

### THIRD CLAIM

### (MANUFACTURE OF AND TRAFFIC IN SIGNAL THEFT DEVICES IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(a)(2))

39.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

40.     Defendant was and is actively engaged in the business of manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices, knowing or having reason to know that such devices (a)is primarily designed or produced for the purpose of circumventing DIRECTV's encryption and conditional access technological measures, (b)has only limited commercially significant purpose or use other than to circumvent DIRECTV's encryption and conditional access technological measures, or (c)is marketed by defendant and persons acting in concert with defendant for use in circumventing DIRECTV's encryption and conditional access technological measures, in violation of 17 U.S.C. § 1201(a)(2).

41.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing

DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

42.     Defendant has violated Section 1201(a)(2) of the Digital Millennium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

43.     Defendant knew or should have known that manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices, was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.   Unless restrained by this Court, defendant will continue to violate 17 U.S.C. § 1201(a)(2).

## FOURTH CLAIM

### (TRAFFIC IN SIGNAL THEFT DEVICES IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(b)(1))

44.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

45.     Defendant was and is actively engaged in the business of manufacturing, importing, exporting, offering to the public, providing and/or selling illegal satellite signal theft devices, knowing or having reason to know that such devices (a) are primarily designed or produced for the purpose of circumventing the protection afforded by DIRECTV's encryption and conditional access technological measures, (b) have only limited commercially significant purpose or use other than to circumvent the protection afforded by DIRECTV's encryption and conditional access technological measures, or (c) are marketed by defendant and persons acting

in concert with defendant for use in circumventing the protection afforded by DIRECTV's encryption and conditional access technological measures, in violation of 17 U.S.C. § 1201(b)(1).

46.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

47.     Defendant has violated Section 1201(b)(1) of the Digital Millennium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

48.     Defendant knew or should have known that manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, defendant will continue to violate 17 U.S.C. § 1201(b)(1).

## FIFTH CLAIM

### (UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF FEDERAL WIRETAP LAWS, 18 U.S.C. § 2511(1)(a))

49.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO.    Page 13

50.     By designing, developing, manufacturing, assembling, modifying, importing, exporting, trafficking, distributing and/or selling illegal satellite signal theft devices, defendant has intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmissions of television programming, in violation of 18 U.S.C. § 2511(1)(a).

51.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

52.     Defendant has engaged in conduct in violation of Section 2511(1)(a) of the Federal Wiretap Laws for a tortious or illegal purpose, or for purposes of direct or indirect commercial advantage or private commercial gain.

53.     Defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, defendant will continue to violate 18 U.S.C. § 2511(1)(a).

///

///

///

///

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO.   Page 14

## SIXTH CLAIM

### (MANUFACTURE AND SALE OF SIGNAL THEFT DEVICES IN VIOLATION OF FEDERAL WIRETAP LAWS, 18 U.S.C. § 2512(1)(b))

54.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

55.     Defendant has engaged in the business of manufacturing, assembling, possessing and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that the design of such devices renders them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions of television programming, and that such devices, or any components thereof, have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b).

56.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

57.     Defendant has engaged in conduct in violation of Section 2512(1)(b) of the Federal Wiretap Laws for a tortious or illegal purpose, or for purposes of direct or indirect commercial advantage or private commercial gain.

58.     Defendant knew or should have known that manufacturing, assembling, possessing, and/or selling illegal satellite signal theft devices which are primarily useful for the purpose of surreptitious interception of DIRECTV's satellite television programming, was and is

illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendant will continue to violate 18 U.S.C. § 2512(1)(b).

### PRAYER FOR RELIEF

WHEREFORE, plaintiff DIRECTV asks that the Court grant the following relief:

(1)    Find that defendant's conduct in designing, developing, manufacturing, assembling, modifying, importing, exporting, possessing, distributing, selling, and/or providing, illegal satellite signal theft devices, placing advertisements for the sale of such devices, and providing software, information, and technical services therefor, violate 47 U.S.C. § 605(a) and (e)(4), 17 U.S.C. § 1201(a) and (b), 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b);

(2)    In accordance with 47 U.S.C. § 605(e)(3)(B)(i), 17 U.S.C. § 1203(b)(1), 18 U.S.C. § 2520(b)(1) enjoin and restrain defendant, and persons or entities controlled directly or indirectly by defendant, from (a) designing, developing, manufacturing, assembling, modifying, importing, exporting, possessing, trafficking, distributing or selling illegal satellite signal theft devices; (b) assisting, procuring, aiding and abetting third persons in the unauthorized reception and use of DIRECTV's television programming; (c) placing advertisements for the sale of illegal satellite signal theft devices, or (d) providing software, information and technical support services therefor;

(3)     In accordance with 47 U.S.C. § 605(e)(3)(B)(i), 17 U.S.C. § 1203(b)(1), 18 U.S.C. § 2520(b)(1), order defendant to return to plaintiff DIRECTV all trade secrets, proprietary information, Access Cards and other hardware or software derived from or intended for the DIRECTV satellite system;

(4)     In accordance with 17 U.S.C. § 1203(b)(2) and (6), impound all illegal satellite signal theft devices in defendant's possession, custody or control, and further order the remedial modification or the destruction of such devices;

(5)     In accordance with 47 U.S.C. § 605(e)(3)(C)(i) and (ii), award plaintiff DIRECTV the greater of (a)its actual damages together with any profits made by defendant that is attributable to the violations alleged herein, or (b)statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a);

(6)     In accordance with 47 U.S.C. § 605(e)(3)(C)(i), award plaintiff DIRECTV the greater of (a)its actual damages together with any profits made by defendant that is attributable to the violations alleged herein, or (b)statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4);

(7)     In accordance with 17 U.S.C. § 1203(c)(2) and (3)(A), award plaintiff DIRECTV the greater of (a)its actual damages together with any profits made by defendant that are attributable to the violations alleged herein, or (b)statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(2) and (b)(1);

(8)     In accordance with 18 U.S.C. § 2520(c)(2), award plaintiff DIRECTV the greater of (a)its actual damages together with any profits made by defendant as a result of the violations alleged herein, or (b)statutory damages of whichever is the greater

of $100 per day for each day of violation of 18 U.S.C. §§ 2511(1) and 2512(1)(a) and (b), or $10,000;

(9)     In accordance with 18 U.S.C. § 2520(b)(2), award plaintiff DIRECTV punitive damages for each violation of 18 U.S.C. §§ 2511(1) and 2512(1)(b);

(10)    In accordance with 47 U.S.C. § 605(e)(3)(B)(iii), 17 U.S.C. § 1203(b)(3) and (4), and 18 U.S.C. § 2520(b)(3), direct defendant to pay to plaintiff DIRECTV all of its costs, reasonable attorneys' fees and investigative fees;

(11)    For prejudgment interest on all damages, where allowable by law; and

///

///

///

///

///

///

///

///

///

///

///

///

///

///

(12)    For such additional relief as the Court deems to be just and equitable.

DATED this 26th day of January, 2004.

Respectfully submitted,

**HONIGMAN MILLER SCHWARTZ & COHN**

By: _____

Norman C. Ankers (P30533)
Bradley H. Darling (P63176)
Christy H. Dral (P63621)
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3583
(313) 465-7346
(313) 465-7347 (fax)

YARMUTH WILSDON CALFO PLLC

Vickie V. Carleton *(admission pending)*
John Jamnback *(admitted E.D. Mich.)*
PO Box 1110
Seattle, Washington  98111-1110
(206) 654-4125
(206) 654-4128 (fax)

Attorneys for Plaintiff DIRECTV, Inc.

COMPLAINT FOR COMPENSATORY, STATUTORY
AND OTHER DAMAGES, AND FOR INJUNCTIVE
RELIEF
NO. – Page 19

MI9.57 ea195429 1/19/04

JS 14 11/99 · **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: _St. Clair_ 26/47

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

I. (a) PLAINTIFFS     70275
DIRECTV, INC.,
a California corporation

**04-70275**

(b) County of Residence of First Listed:

DEFENDANTS     Cleland/WC
CHRIS RYAN

**ROBERT H. CLELAND**

County of Residence of First Listed:
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorneys (Name, Address and Telephone Number)
Norman C. Ankers (P30333)
Bradley H. Darling (P63176)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, Michigan 48226      (313) 465-7000

Attorneys (If Known)

**MAGISTRATE JUDGE CAPEL**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties In Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)       and One Box for Defendant)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21:881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of | ☐ 320 Assault, Libel | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| Overpayment and | And Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced & |
| Enforcement of Judgment | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 151 Medicare Act | Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | ☐ 370 Other Fraud | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal | Product Liability | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | Injury | | ☐ 720 Labor/Mgmt. | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | Relations | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Litigation | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 28 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act. | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN      (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     $ DEMAND    CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No

**VII. RELATED CASE(S) IF ANY**    (See Instructions)    JUDGE _____    DOCKET NUMBER _____

DATE 1/26/04     SIGNATURE OF ATTORNEY OF RECORD

# PURSUANT TO LOCAL RULE 83.11

**1.**   **Is this a case that has been previously dismissed?**

☐ **Yes**
☒ **No**

 If yes, give the following information:

**Court:** _____

**Case No.:** _____

**Judge:** _____


**2.**   **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court?  (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**

☒ **Yes**
☐ **No**

**If yes, give the following information:**

**Court:**   United States District Court, Eastern District of Michigan, Southern Division

**Case No.:**   02-74521; 02-74510; 02-74507; 02-74522; 02-74515; 02-84518; 02-74516; 02-73925; 02-74513

**Judge:**   Friedman; Steeh; Hood; Edmunds; Rosen


Notes: